In the Matter of the Application of EDWARD DOMES, as Sole Trustee of School District No. 10 of the Town of Sardinia, Erie County, New York, Petitioner, against THE BOARD OF SUPERVISORS OF ERIE COUNTY, N. Y., for an Order of Certiorari, Respondent.

Fourth Department, July 1, 1930.

*Raymond C. Voght,* for the petitioner.

*M. Edwin Merwin* [*Jacob Tick* of counsel], for the respondent.

TAYLOR, J. The county of Erie is a municipal corporation (County Law, § 3) and is an " authorized agency " under section 300, subdivision (i) of the State Charities Law (added by Laws of 1923, chap. 706, as amd. by Laws of 1924, chap. 437), empowered to board out dependent children in family homes. (State Charities Law, § 303, added by Laws of 1923, chap. 706, as amd. by Laws of 1924, chap. 437.)

The county of Erie, through its commissioner of charities and corrections, boarded out twenty such children, during the years 1926–1927 and 1927–1928, in family homes in school district No. 10 of the town of Sardinia, Erie county. Fair compensation for tuition and medical attendance for the children is concededly $437. Pursuant to a mandamus order the claim of the school district for this amount was audited by the board of supervisors. But the board has disallowed the claim and refused to pay it. This is a hearing in a certiorari proceeding brought to settle the controversy. The sole question requiring determination is the construction of subdivision 4 of section 567 of the Education Law, (added by Laws of 1923, chap. 399, as amd. by Laws of 1924, chap. 526 and Laws of 1927, chap. 483), with regard to the facts before us. That subdivision reads as follows: " 4. Children cared for in a duly incorporated orphan asylum or other institution, for the care, custody and treatment of children, other than the children of the officers and employees of such institution, (or children cared for in family homes at board), shall not be deemed to be residents of the school district in which such institution (or family home) is located, (unless such family home shall be the actual and only residence of any such child). The trustees or other authorities in charge of any such institution (or those placing children in such family homes at board) may contract with the trustees or board of education of the school district in which such institution (or family home) is located for the secular instruction of such children. If such children are supported and maintained at the expense of a county, city or other municipality, the cost of the secular instruction of such children in

the school in the district shall be paid by the county, city or municipality which is liable for the payment of the cost of their support and maintenance. The trustees or board of education of the school district in which such institution or family home is located shall receive such children in the school of the district for instruction for a compensation to be fixed by the trustees or board of education, unless such trustees or board of eduation can establish to the satisfaction of the commissioner of education that there are valid and sufficient reasons for refusal to receive such children."

The parentheses inserted are ours. This subdivision is an amendment of subdivision 4 as amended by chapter 526 of the Laws of 1924; and the only difference of any materiality in this proceeding between the law as it now stands and, the enactment of 1924 is indicated by the matter within the above parentheses, which was not in the 1924 statute. Before 1927 there was no statute which had any material bearing upon the matter in dispute.

The children boarded out by Erie county were all either orphans, or half-orphans whose living parents had abandoned them. Concededly none of them resided anywhere in school district No. 10 before they were boarded out. They were " dependent " and " neglected " (State Charities Law, § 300) when the county took them in charge. The county was in a parental relation to them while they were under the care, custody and control of the commissioner of charities and corrections (Education Law, § 2, subd. 10; Id. § 627, subd. A), as added by Laws of 1928, chap. 646, and the county had continuing authority to remove any of them from the home where he (she) had been placed. (State Charities Law, § 303.) The word " residence " in the statute quoted is apparently equivalent to " abode " or " home," the place where a child " lives," in the ordinary sense, until through removal or some vicissitude to which human beings are subject a change in dwelling place is brought about.

In enacting the statute of 1924 the Legislature provided that children placed in such institutions — from wheresoever they came — should be deemed non-residents, and not entitled to free tuition; and a way was pointed out by which the children might obtain secular instruction. In 1927 the Legislature apparently deemed it advisable to make provision for children boarded out in family homes similar to that in effect as to children in these institutions, and amended the statute accordingly. And — probably having in mind possible instances in which children might be boarded out in the same school district in which they had been residing — additional provision was wisely made (by implication) that such children should be deemed residents of the school district and

entitled to free tuition, if over five and under twenty-one years of age. (Education Law, § 567, subd. 1.) Whether the Legislature intended the exception of certain " family-home " children from classification as non-residents to apply to such children as formerly resided anywhere in the district, or only to those formerly residing in the particular homes into which they were boarded out, is not material in this proceeding, since all the children were non-residents of school district No. 10 before being boarded out.

The 3d sentence of subdivision 4, as amended by chapter 483, Laws of 1927 (above quoted) is mandatory. It compels a municipality to pay the cost of the secular instruction of all " such children," i. e., those in institutions and — with the exception mentioned — those being boarded out in family homes — whenever the municipality is " supporting and maintaining " the children, as Erie county was in this case. The children under consideration do not fall within this exception for the reason which has been stated — prior non-residence in school district No. 10.

The mandate of this statute, thus construed, is grounded in common fairness. It is the beneficent policy of this State that all its children — not excepting those neglected, abandoned or homeless — shall have secular instruction. When non-resident children are imported into a school district, the district should be paid for instructing them. When a municipality is supporting and maintaining such children, it should also pay for their instruction. That is not an added burden which is heavy or unreasonable. Cases might arise in which a child " boarded out " would become so much a part of the foster household that in fact and in law it would be a " resident " where domiciled, in the fullest sense. No such situation is involved in this proceeding. And we are not assuming to make this opinion applicable to anything other than the facts presented in this record.

The determination reviewed should be annulled, with $50 costs and disbursements to petitioner, and the matter remitted to the board of supervisors of Erie county, with instructions to direct payment to petitioner of the sum of $437 and interest thereon from June 15, 1928.

All concur. Present — SEARS, P. J., CROUCH, TAYLOR, THOMPSON and CROSBY, JJ.

Determination of the board of supervisors annulled with $50 costs and disbursements to the petitioner and matter remitted to the board of supervisors with instructions to direct payment to the petitioner of the sum of $437, with interest thereon from June 15, 1928.